No. 2889.

PRATT MINTER v. THE STATE.

THEFT—FACT CASE.—A fraudulent *taking* is an absolutely essential element of theft, and must be affirmatively established by the State in order to authorize a conviction. See the statement of the case for evidence *held* insufficient to support a conviction for the theft of a hog, because insufficient to establish a fraudulent taking.

APPEAL from the County Court of Morris. Tried below before the Hon. D. M. Rodes, County Judge.

The conviction in this case was for the theft of Ragland's hog, and the penalty assessed was a fine of ten dollars and confinement in the county jail for twelve hours.

Ragland testified, in substance, that, soon after dinner on the day alleged in the indictment, he, then being at home in Morris county, heard the report of a gun and the baying of a dog, at a point about three hundred yards west of his house. Soon afterwards, a bunch of his hogs, frightened and excited, came running to the house. He at once inspected that bunch of hogs, and discovered that one of the animals was missing. He went at once in search of the animal. Failing to find it, he called a neighbor to his assistance, and the hog, badly wounded with buckshot, was found in a water hole of a branch. Thence it was driven to witness's house, and afterwards was killed and eaten by witness. About the time he got the hog home he again heard the baying of a dog in the woods, and went to and recognized the dog as the animal of the defendant. Defendant soon appeared, and witness asked him about the shooting of the hog. He said he knew nothing about it. Witness trailed the hog back from where it was found in the water hole to a point near the old Daingerfield and Belden road, where it was shot. Over that trail he found the foot tracks of a man going from the place where the hog was shot to a point near where the hog was found in the branch. Those tracks were made by new boots, and showed that the man was running when he made them. Witness trailed that track from the place where the hog was shot into the old road mentioned, and at a point

on that road about two hundred yards from where the hog was shot, he met and talked with Lem Short. He met Short not long after the hog was shot. Defendant had on new boots when witness saw him in the woods on that day.

Lem Short testified, for the State, that he left Everett's house on the old Daingerfield and Belden road on the morning that Ragland's hog was shot, about two hours and a half after sun rise. He was in a wagon, and had traveled about five miles over that road, and reached a point near where the hog was shot, when he met the defendant. Defendant then had a short gun on his shoulder, and was followed by a dog. He told witness that he was out hunting. Witness did not hear, the report of a gun on that day.

Elijah Black testified, for the State, in substance, that he and Jim Bolin were in the woods, near Ragland's house, on the day that Ragland's hog was shot. They went to Wise's place to look at it with the view of renting it. They took their guns and dogs along, and at a point in the woods not very far from Ragland's house they treed a squirrel, and shot at it eight or ten times. They were joined at that tree by the defendant and his dog, who came from the direction of Ragland's house. Witness asked defendant, who had a short musket gun with him, if he thought he could kill the squirrel. He replied that he thought he could if he had ammunition; that he left home with only one charge—the one in his gun—and had fired it at a squirrel a few minutes before, and missed it, his gun being loaded with buckshot. Witness gave him a load, and he shot and killed the squirrel. Soon after this prosecution was instituted defendant came to witness and asked him, if put upon the witness stand, not to testify that he, defendant, on the day that Ragland's hog was shot, told him, witness, that he, defendant, shot at a squirrel on that day with a load of buckshot.

The defense introduced no evidence.

J. M. Powers, for the appellant.

W. L. Davidson, Assistant Attorney General, and Moore & Hart, for the State.

WILLSON, JUDGE. This conviction is for the theft ot a hog. Considering the evidence in the most favorable light for the State, it shows that defendant shot and wounded the hog and pursued it for some distance, but did not kill or catch it. The hog was found by its owner lying in a branch, alive but badly

wounded. He drove it home and killed it and used the meat. It is clear from the evidence that the defendant never had actual, manual possession of the hog, and never converted it to his own use. To constitute theft there must be a fraudulent *taking* of the property, and while there may be a taking of the property without actual manual possession of it, still the property must in some manner have come into the possession of the party accused of the theft, either actually or constructively, or he can not be said to have taken it. It has been held that *killing* an animal constituted a *taking* of it. (Hall v. The State, 41 Texas, 287; Coombs v. The State, 17 Texas Ct. App., 258.) Where a party called up to him gentle hogs in their range and sold them to another person who was present, it was held that the seller's acts constituted a taking, because he exercised control over the hogs by calling them up, and had them constructively in his possession, and converted them to his own use by constructively delivering them to the purchaser, who thereafter took actual possession of them. (Madison v. The State, 16 Texas Ct. App., 433.) So, where a cow was pointed out on her range and sold and constructively delivered to the purchaser, it was held to be a taking by the seller. (Doss v. The State, 21 Texas Ct. App., 505.) It will be observed that in all these cases there was a constructive possession of the property by the accused, and a constructive interruption of the possession of the owner of the property. In all these cases the accused for the time being, either in person or by an innocent agent, had the actual control of the property; had it under his actual dominion, with the power to take it into his actual manual possession. We have found no authority which holds that the mere wounding of an animal upon its range and the pursuit of it, without capturing it, without bringing it in some way under the control and dominion of the party, is sufficient to constitute a taking. The decisions we have cited, we think, reach to the utmost limits upon this question, and to further extend the doctrine would not be warranted by precedent nor by reason. We are of the opinion, therefore, that this conviction is not sustained by the evidence. While under the evidence the defendant might be successfully prosecuted for one or the other of the offenses denounced by articles 679 and 680 of the Penal Code, the facts do not establish that he is guilty of theft.

The judgment is reversed and the cause is remanded.

Opinion delivered October 24, 1888. *Reversed and remanded.*